Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5424 | **DATE** | 6/1/2004 |
| **CASE TITLE** | Firstar Bank NA vs. Goldman, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Disrupt Confirmation of Sale

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Defendant's Motion to Disrupt Confirmation of the Sale [18-1] brought pursuant to 735 ILCS 5/15-1508(b)(iv). For the reasons stated on the attached Opinion and Order, Defendant's motion [18-1] is DENIED. Plaintiff's Motion to Confirm the Sale [19-1] is GRANTED. (See Attached.)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 - 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 31 |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRSTAR BANK NA, as Successor in )
Interest to an Ohio Bank, )
)
    Plaintiff, )
)
    v. )
) Case No. 02 C 5424
M. MICHAEL GOLDMAN, a/k/a MERWYN ) Judge Charles R. Norgle
GOLDMAN, DORRIS PRIZANT, THE )
RIVER PARK AT DIVERSEY CONDOMINIUM )
ASSOCIATION, UNKNOWN OWNERS and )
NON-RECORD CLAIMANTS, )
)
    Defendants. )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge.

Defendants move pursuant to 735 ILCS 5/15-1508(b)(iv) to disrupt confirmation of the sale of real estate located at 2208 West Diversey, Unit D, Chicago, Illinois. For the following reasons, Defendant's motion is denied.

## I. BACKGROUND

For approximately six years, Defendants M. Michael Goldman and Dorris Prizant (collectively "Defendants") owned and occupied the property commonly known as 2208 West Diversey, Unit D, Chicago, Illinois ("Property"). During this period, the Property was subject to a mortgage. On July 31, 2002, Plaintiff Firstar Bank NA ("Firstar") commenced this action against Defendants seeking foreclosure of the mortgage. In October 2002, Defendants and Firstar entered into a forbearance agreement in which Firstar agreed to dismiss the foreclosure action provided that Defendants make monthly mortgage payments to Firstar. In November 2002, Defendants ceased making mortgage payments as required

31

by the forbearance agreement, allowing Firstar to pursue the foreclosure proceedings.

On May 2, 2002, the court reinstated Firstar's action against Defendants. On May 7, 2003, Defendants were personally served with process. Defendants did not answer the Complaint or otherwise plead, nor was an attorney appearance ever filed on their behalf. Defendants never personally appeared in the courtroom. On December 5, 2003, the court entered an Order of Default against Defendants and entered a Judgment of Foreclosure and Sale in the amount of $364,725.90. The judgment provided that the statutory redemption period expire on March 6, 2004. Defendants failed to redeem the Property.

On March 9, 2004, court-appointed Special Commissioner Nancy Vallone conducted a public sale of the Property. At the auction, Firstar made an opening bid of $367,294.18, representing the entire amount of the debt Defendants owed to Firstar. Intervenors Mary O'Neil, Colette O'Neil, and Kevin Eickmann (collectively "Intervenors") successfully bid $367,295.19 for the Property. After tendering full payment, Intervenors received a Certificate of Sale. Defendants remained in possession without making payments.

On March 19, 2004, Firstar filed a Motion to Confirm the Sale, which was to be heard on March 26, 2004. On March 23, 2004, Defendants filed this motion styled "Petition to Disrupt Confirmation of Sale," brought pursuant to 735 ILCS 5/15-1508(b)(iv). Defendant's motion is fully briefed and now before the court.

## II. DISCUSSION

### A. Review Under the Illinois Mortgage Foreclosure Act

Under Illinois law, a judicial foreclosure sale is not complete until it has been approved by the trial court. Fleet Mortgage Corp. v. Deale, 678 N.E.2d 282, 285 (Ill. App.

2

Ct. 1997). The high bid received at a judicial sale is merely an irrevocable offer to purchase the property, and acceptance of the offer takes place upon judicial confirmation. Citicorp Savings v. First Chicago Trust Co., 645 N.E.2d 1038, 1045 (Ill. App. Ct. 1995). Until the court confirms the judicial sale, there is not a true sale in the legal sense. Id.

The Illinois Mortgage Foreclosure Act provides that the trial court shall confirm a foreclosure sale unless: (1) proper notice was not given; (2) the terms of the sale were unconscionable; (3) the sale was conducted fraudulently; or (4) justice was otherwise not done. 735 ILCS 5/15-1508(b); see also Commercial Credit Loans, Inc., v. Espinoza, 689 N.E.2d 282, 285 (Ill. App. Ct. 1997). "A court is justified in disapproving a judicially mandated foreclosure sale if unfairness is shown which is prejudicial to an interested party." Id. (citing Citicorp, 645 N.E.2d at 1045). The party opposing the sale bears the burden of proving that grounds to disallow the sale exist. Cragin Federal Bank for Savings v. American National Bank & Trust Co. of Chicago, 663 N.E.2d 1011 (Ill. App. 1994). Trial courts have broad discretion in approving or disapproving sales made at their direction; however, this discretion is not without its limits. In re Rosewell, 603 N.E2d 753, 756 (Ill. 1992).

## B. Application to This Case

Defendants concede that the first three elements of 735 ILCS 5/15-1508(b) are not at issue. They acknowledge that notice was proper, the terms of the sale were not unconscionable, and the sale was not conducted fraudulently. Defendant's sole basis for disrupting the sale is that justice will not be served if the court confirms the sale. See Def.'s Reply, at 2. Specifically, Defendants make two arguments in support of their contention. First, they argue that because the sale price was significantly below the

3

Property's fair market value, Defendants, who are both over seventy years of age, stand to lose their life savings. Second, Defendants argue that confirmation of the sale would be unjust because they reasonably relied on an attorney to represent them in the foreclosure proceeding, when in fact the attorney failed to do so. The court will examine both of Defendant's arguments.

### 1. *Property's Fair Market Value*

Defendants purchased the Property approximately six years ago. It is located in a developing area within the city of Chicago where real estate values have significantly increased over recent years. Upon filing their motion, Defendants submitted an appraisal estimating the Property's value at approximately $660,000. Both Intervenors and Plaintiff objected to this figure and identified numerous flaws in Defendant's appraisal, including the use of comparable properties located in different neighborhoods which contain different floor plans[1] from that of the subject property. As a result, Defendants submitted a new appraisal, estimating the property's value at approximately $530,000. After comparing both appraisals, it is clear that Defendant's second appraisal, which estimates the Property's value at approximately $530,000, is a more accurate reflection of the Property's fair market value[2]. The comparable properties used in the second appraisal are located much closer to the subject property, and the floor plans are similar. Thus, for purposes of this motion,

---

[1]In using the term floor plans, the court is referring to the property's layout, number of rooms, and total square footage.

[2]This second appraisal gives the adjusted sales price of five comparable properties. These adjusted sales prices range from $485,000 to $570,000, with an average price of $530,000. Noteworthy is the fact that only one of the comparable properties is located in the same condominium development as the subject property. This property's adjusted sales price is $485,000.

4

the court will refer only to Defendant's second appraisal.

At the auction, Intervenors purchased the Property for $367,385.19. The purchase price exceeded the amount of the debt in which Defendants owed Plaintiff by one dollar. Assuming the Property is valued at $530,000, the purchase price was 69.3% of its fair market value. Defendants offer no authority to suggest that absent any irregularities in the sale process itself, a purchase price approximately 30% below market value is unjust.

Under Illinois law, there is no requirement that foreclosed property be sold for its appraised value, which may or may not reflect the price that could be obtained upon sale of the property. See World Savings, 740 N.E.2d at 474. It has long been recognized that property does not bring its full value at forced sales, and that price depends upon many circumstances from which the debtor must expect to suffer a loss. See Horney v. Hayes, 142 N.E.2d 94, 97 (Ill. 1957). In the absence of mistake, fraud, or violation of duty by the officer conducting the sale, mere inadequacy of sales price is not a sufficient reason to disturb a sale. See World Savings, 740 N.E.2d at 474. This rule is premised on a policy of providing stability and finality to judicial sales. Id. The interest of finality instills confidence in the process, encouraging parties to bid at judicial sales. See Corporate Assets, Inc., v. Paloian, – F.3d – , 2004 U.S. App. LEXIS 9536, *11 (7th Cir. May 17, 2004).

In this case, Defendants concede that the sale was conducted properly. See Trans. of March 26, 2004, at 8, 12. There are no allegations that Firstar, Special Commissioner Vallone, or Intervenors did anything inappropriate. Absent such a claim, a sales price of $367,385.19 was neither unjust nor unconscionable. See Lyons Savings and Loan Association v. Gash Associates, 545 N.E.2d 412, 415 (Ill. App. Ct. 1989) (finding that a

sales price of 68.9% of the subject property's appraised value is not grossly inadequate); see also Illini Federal Savings and Loan Association, 516 N.E.2d 609, 613 (Ill. App. Ct. 1987) (holding that absent fraud or mistake, a sales price of 71.4% of the subject property's appraised value is not unjust or unconscionable).

In addition, the fact that Defendants stand to lose a significant amount of the equity in their home, which they claim was their only asset, does not by itself make the sale unjust. Firstar brought this foreclosure proceeding on July 31, 2002, and Defendants were served with process shortly thereafter. Prior to this date, Defendants knew that they were not meeting their obligations under the terms of the original mortgage agreement. They also knew that they did not meet their obligations under the terms of the forbearance agreement. On December 5, 2003, the court entered a Judgment of Foreclosure and Sale in the amount of $364,725.90, with the right of redemption extending to March 6, 2004. Defendants acknowledge that they were aware of the foreclosure suit prior to March 6, 2004. See Affidavit of M. Goldman ¶ O. Throughout this entire period, they made no attempt to sell the Property and were unable to timely refinance. Thus, knowing there was a significant amount of equity in the home, Defendants had almost two years to remedy the situation. The fact that they did not do so, or that their efforts failed, does not make the sale unjust. See In Re Rosewell, 603 N.E.2d at 756 (indicating that absent a showing of a strong public interest, a court will not disrupt a judicial sale simply because of one party was negligent).

### 2. Reliance on Attorney

Defendants also argue that confirmation of the sale would be unjust because they were misled by their attorney, whom they hired to represent them in the matter. They

assert that they hired an attorney in October 2003. The attorney was assisting them with refinancing the Property, and Defendants forwarded all correspondence regarding the Property to him. Defendants assert that they relied on their attorney to keep them informed of the status of the foreclosure proceeding. On several occasions, Defendants questioned their attorney about the status of the foreclosure proceeding, and each time he assured them that he would take care of the matter. At no time during the pendency of this lawsuit, however, did an attorney file an appearance on behalf of Defendants or otherwise appear in the case.

Defendants also state that their attorney failed to notify them about the Judgment of Foreclosure and the Property Sale. Believing that Firstar would communicate directly with their attorney, Defendants did not think that they were obligated to contact Firstar regarding the matter. In fact, when Defendants contacted Firstar's attorney about the proceeding, Firstar's attorney indicated that she could not speak directly to them after learning that they were represented by counsel. Based on these facts, Defendants contend that they were not aware of either the December 5, 2003 Judgment Order or the March 9, 2004 foreclosure sale, and therefore confirmation of the sale under these circumstances would be unjust.

Assuming Defendants statements are true, Defendants still have not provided a sufficient basis for the court to disrupt the judicial sale. Defendants voluntarily chose this particular attorney to represent them in this matter. The fact that he did a poor job, or in this case nothing at all, does not change the fact that Judgment of Foreclosure was properly entered. Nor does it change the fact that the sale was properly conducted and the Intervenors acted appropriately. It is a well-settled general rule that there is no

7

constitutional or statutory right to effective assistance of counsel in civil cases. See Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 840 (7th Cir. 1999). Moreover once a judgment is entered, even an attorney's gross negligence does not entitle a party another opportunity to litigate. See United States v. 7108 West Grand Avenue, Chicago, Illinois v. Flores, 15 F.3d 632, 633 (7th Cir. 1994) (stating that malpractice may be a good reason to recover from the lawyer, but it not justify prolonging litigation against the original adversary). If Defendant's attorney was indeed negligent, than Defendant's remedy is against that attorney. See Tango Music, LLC v. Deadquick Music, Inc., 348 F.3d 244, 247 (7th Cir. 2003) (holding that the party whose attorney was negligent should not be allowed to shift the burden of its agent's neglect to the court and the other litigants); see also Stanciel v. Gramley, 267 F.3d 575, 581 (7th Cir. 2001) (stating that an attorney's shortcomings do not entitle his client to a new round of litigation); Bell v. Eastman Kodak Co., 214 F.3d 798, 802 (7th Cir. 2000) (holding that the exclusive remedy for attorney negligence in a civil case is a separate action for legal malpractice); Pokuta, 191 F.3d at 840 (same). As such, Defendants have not met their burden of establishing that the court should disrupt the sale under 735 ILCS 5/15-1508(b)(iv).

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Disrupt Confirmation of the Judicial Sale is denied.

IT IS SO ORDERED.

DATED: 6/1/04

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

8